No. 29,863.

ALYS E. ANTHONY, *Plaintiff*, v. FREDERICK G. SYKES et al., *Defendants* (ROY A. SYKES, HUBERT C. SYKES, MAIA R. CLARK, and MARY E. SYKES, *Appellants*, and CATHERINE I. LYONS, *Appellee*).

(297 Pac. 728.)

Opinion filed April 11, 1931.

*E. M. Tipton*, of Kansas City, Mo., for the appellants; *S. S. Alexander*, of Kingman, of counsel.

*John McKenna*, of Kingman, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for partition of land. The controversy was whether Catherine I. Lyons, one of the defendants, had any interest in the land. Her title rests on a deed made by a trustee in bankruptcy in 1905. Effectiveness of the deed was contested. Judgment was rendered in her favor, and contesting codefendants appeal.

By virtue of his father's will Robert H. Sykes became the owner of a one-sixth interest in the land in controversy, subject to a devise in trust for the benefit of two sisters, and until death or marriage of the survivor. In a voluntary proceeding Sykes was adjudged bankrupt in 1903, and a trustee was appointed who qualified and continued to act until March, 1905. The only property the bankrupt scheduled, except exempt personalty valued at $50, was his remainder in the land, valued at $500. Debts were scheduled amounting to $6,559.29. There was an application to sell, an order of sale, and a sale. There was a trustee's deed which recited that, by virtue of license granted on February 23, 1905, the trustee sold the land at private sale to Catherine I. Lyons for $10. There was an order made on March 16, 1905, after notice, approving the trustee's final account and discharging him. The referee's certified

record was filed in the office of the clerk of the United States district court on March 24, 1905.

The trustee's deed was executed on March 23, 1905, a week after the order discharging him was made. The deed was filed for record by the grantee on April 10, 1905. The bankrupt lived until July 23, 1909, and during his lifetime renounced interest in the land. The appellants are the bankrupt's heirs. The trust terminated in March, 1929, and the amended petition was filed in October, 1929.

There was no evidence that the land constituted surplus assets to be returned to the bankrupt after payment of debts, and on the face of the proceedings there could be no surplus. While the trustee was not bound to do so, he accepted the land as assets. Title vested in him. Jurisdiction of the court to dispose of the land is not questioned. The court undertook to dispose of the land, there were proceedings to that end, and the land was sold and deeded to the purchaser. So the land was not undisposed of. No other source of reversionary title is suggested, and the heirs of the bankrupt had no standing to contest title of Catherine I. Lyons.

The heirs contend the proper procedure for disposing of the land was not followed in several particulars. Departures from regulations governing sale were of no interest to anybody except creditors. There was no evidence that creditors made any objection to the proceedings ending in the sale, or to the sale. Whether there was confirmation or deed, the purchaser had a right to confirmation and deed, unless the court intervened. It did not intervene, the trustee's final account was approved, and a deed was issued to the purchaser. Whether or not the purchaser's legal title was perfect, she had full equitable title, not vulnerable to collateral attack on the bankruptcy proceeding.

The heirs make the following objections to the proceedings: (1) The trustee's petition to sell requested private sale; the order called for sale by auction. The document was indorsed "Petition and order for private sale of real estate . . . Allowed February 23, 1905." (2) There was no appraisement. (3) The sale was not confirmed. (4) Less than ten days' notice of sale was given to creditors. (5) The deed was executed after the trustee was discharged.

There was no evidence the records and documents produced by the heirs were all the records and documents of the bankruptcy proceeding. So far as the proof goes in this case there may have been

826

an appraisement and an order of confirmation, and the district court presumed, as it was bound to presume, that every step essential to regularity of proceeding was taken, until affirmative proof to the contrary was produced.

Creditors alone were concerned with notice of sale, and the fact that the notice of sale was one day short did not oust the court of jurisdiction to approve the sale.

If after direction to sell at auction, the trustee sold at private sale, the court still had jurisdiction over the sale and could approve or disapprove. Disapproval was not established. On the other hand, approval was established. The final account of the trustee was not introduced in evidence. Presumably it contained the debit item of proceeds of sale of land, which the evidence shows the trustee received, and which, under all the circumstances, was the only possible debit item. The district court made the following finding of fact:

"That on March 6, 1905, trustee filed his final account, notice was given to all creditors of same, final meeting of creditors was ordered to be held on March 16, 1905, due notice given to creditors of final meeting and that final account of trustee would be examined and passed on, that on March 16, 1905, the final account of trustee was examined, found correct, and ordered allowed and trustee be discharged.

"The foregoing account having been presented for allowance, and having been examined and found correct, it is ordered that the same be allowed, and that the trustee be discharged of his trust. (Signed by the referee.)"

This order constituted sufficient approval of the sale as against collateral attack made at this late date.

Execution of the deed merely completed the approved sale which the trustee had conducted, and the fact that he executed it after entry of an order of discharge, but before certification of the record to the United States district court, did not invalidate it. (*Head v. Daniels,* 38 Kan. 1, 15 Pac. 911.)

It must always be borne in mind that in cases of collateral attack on judicial proceedings, nothing vitiates except lack of jurisdiction to enter upon the proceeding, or subsequent loss or overstepping of jurisdiction.

In the case just cited appears the following:

"In conclusion, we would say that collateral attacks upon judicial proceedings are never favored; and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void,

but will be held to be valid. Irregularities alone are not sufficient to destroy the validity of judicial proceedings; nor are mere omissions from the record." (p. 12.)

The judgment of the district court is affirmed.

SLOAN, J., not participating.